702 So.2d 876 (1997)
STATE of Louisiana, Appellee,
v.
Charles B. BERNARD, Defendant-Appellant.
No. CR97-362.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
*877 Michael Harson, Lafayette, Kim R. Hayes, Assistant District Attorney, Crowley, for State.
Thomas E. Guilbeau, Lafayette, for Charles B. Bernard.
Before DOUCET, C.J., and DECUIR and AMY, JJ.
AMY, Judge.
The defendant, Charles B. Bernard, appeals his conviction and sentence for distribution of crack cocaine, a violation of La.R.S. 40:967. He maintains that an alleged plea agreement was misrepresented to him and, therefore, his guilty plea was not freely and voluntarily given. He further argues that the sentence imposed, 210 months at hard labor, is excessive. For the reasons which follow, we affirm the defendant's conviction and sentence.

DISCUSSION OF THE RECORD
The record reveals that the Acadia Parish Sheriff's Office received information from a confidential informant regarding the defendant's involvement in drug distribution. Thereafter, the informant assisted in arranging an undercover drug purchase. On March 26, 1993, while other agents stood by in surveillance, the informant purchased $120 worth of crack cocaine from the defendant. The defendant was subsequently arrested.
On April 16, 1993, the defendant was charged by bill of information with distribution of crack cocaine, a violation of La.R.S. 40:967. Initially, the defendant pled not guilty. On January 9, 1995, however, the defendant appeared with counsel to withdraw his previously entered plea of not guilty and tender a plea of guilty to distribution of crack cocaine. This plea was entered during an en masse plea hearing at which fourteen other defendants also appeared before the trial court on unrelated charges. After the defendants were Boykinized and the factual basis for their individual crimes was presented, the trial court accepted their guilty pleas.
On August 22, 1996, the defendant appeared, without counsel, for sentencing and was sentenced to serve 210 months, at hard labor, to run consecutively to a federal sentence the defendant was serving following a subsequent drug arrest. The defendant filed *878 a Motion to Reconsider Sentence, which was denied by the trial court without hearing. The defendant now appeals, urging the following three assignments of error:
1. The Trial Court abused its discretion and committed reversible error when it refused to reconsider sentence of the defendant on the basis that his plea of guilty was not free and voluntary due to the fact that his plea was induced by a promise by his attorney as to the penalty which was not forthcoming and/or a misrepresentation and/or alteration of the plea of guilty form in violation of defendant's constitutional rights.
2. The Trial Court abused its discretion and committed reversible error when it refused to reconsider the sentence of defendant/appellant based upon a breach of the plea agreement and/or lack of awareness of the repercussions of the guilty plea by defendant.
3. The sentence imposed by the Trial Court upon the defendant/appellant is excessive under the circumstances and otherwise constitutes cruel and unusual punishment.

LAW

Breach of the Alleged Plea Agreement
In his first and second assignments of error, the defendant argues that he understood that a plea agreement was in existence at the time of his guilty plea, but that his sentence was not in conformity with that agreement. He maintains that his attorney told him that a plea agreement had been reached wherein he would enter a guilty plea and he would receive a suspended sentence, probation, and a fine. The defendant further maintains that the alleged agreement was originally contained in the plea agreement form he signed in court, but that it "was later marked out without his knowledge or permission." He maintains that since the sentence was not in conformity with the agreement his guilty plea was not freely and voluntarily given. As such, the defendant argues that the trial court abused its discretion and committed reversible error in refusing to reconsider sentence.
In State v. Rios, 95-00961 (La.App. 3 Cir. 3/6/96); 670 So.2d 708, this court discussed withdrawal of a guilty plea as follows:
La.Code Crim.P. art. 559 provides that "[t]he court may permit a plea of guilty to be withdrawn at any time before sentence." The Louisiana Supreme Court has consistently held that the discretion to permit a guilty plea to be withdrawn is vested in the trial judge. That discretion, however, cannot be exercised arbitrarily. State v. Johnson, 406 So.2d 569 (La.1981). In State v. Barnes, 596 So.2d 302 (La.App. 3 Cir.1992), citing State v. Jones, 546 So.2d 1343, 1346 (La.App. 3 Cir.1989), this court held that, "[a]fter sentence has been imposed, a guilty plea may be withdrawn only if it is shown that the plea is constitutionally infirm ..." A guilty plea will not be considered constitutionally valid unless it is made voluntarily by the defendant and with an understanding of the nature of the consequences of his plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)....
Id. at 710. See also State v. Johnson, 95-626 (La.App. 3 Cir. 12/13/95), 666 So.2d 1137, writ denied, 96-0156 (La.4/19/96), 671 So.2d 925. Thus, the standard for withdrawal of a guilty plea is different before sentencing from that after sentencing.
This court has also addressed what constitutes a valid waiver in this context and when a plea may be constitutionally infirm.
To satisfy the requirements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), there must be an affirmative showing in the record that the accused, at the time he entered his guilty plea, knowingly and voluntarily waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers. State v. Fairley, 525 So.2d 588, 590 (La.App. 3d Cir.1988). The present case arises out of a plea bargain agreement between defendant and the State. A guilty plea is invalid, or constitutionally infirm, when a defendant is induced to enter a plea of guilty by a plea bargain agreement, or what he reasonably or justifiably believes was a plea bargain agreement, and the terms of the bargain *879 are not satisfied. State v. Jones, 546 So.2d 1343, 1346 (La.App. 3d Cir.1989); State v. Taylor, 535 So.2d 1229, 1230 (La.App. 3d Cir.1988), quoting State v. Dixon, 449 So.2d 463, 464 (La.1984). It is well settled that if a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there is no ground for invalidating the guilty plea. State v. Malmay, 548 So.2d 71, 73 (La.App. 3d Cir.1989); State v. Jones, supra.

It is also well settled that a misunderstanding between a defendant and counsel for defendant does not have the same implication as a breached plea bargain agreement, and this misunderstanding does not render the guilty plea invalid. State v. Lockwood, 399 So.2d 190 (La.1981); State v. Johnson, 533 So.2d 1288, 1292 (La.App. 3d Cir.1988), writ denied, 563 So.2d 873 (La.1990). In the absence of fraud, intimidation, or incompetence of counsel, a guilty plea is not made less voluntary or less informed by the considered advice of counsel. See, State v. Johnson, 461 So.2d 1259, 1261 (La.App. 1st Cir.1984).
State v. Readoux, 614 So.2d 175, 176-77 (La. App. 3 Cir.1993).
The transcript of the January 9, 1995 guilty plea hearing indicates that some of the defendants at the en masse hearing pled guilty pursuant to plea agreements. There is, however, no such indication that the defendant did so. In fact, the defendant was notified by the trial court that sentencing would await the outcome of a Pre-Sentence Investigation (PSI). The transcript from that en masse plea hearing contains the following exchange between the trial court and the defendants:
THE COURT:
I have in my hand a document that says it's a Plea of Guilty. I have at least one, some of you I have several of these documents for you. In the middle of the page there's a spot for defendant to sign. Someone has signed each of these documents. You all should have a copy of these documents in your hand right now. I need you to look at them and let me know did you sign this?
THE DEFENDANTS:
(Defendants answer affirmatively.)
THE COURT:
Did you read it before you signed it?
THE DEFENDANTS:
(Defendants answer affirmatively.)
THE COURT:
You and your lawyer talked about it before you signed it?
THE DEFENDANTS:
(Defendants answer affirmatively.)
THE COURT:
This document lists a number of rights. We've talked about some of them. In No. 8 it lists the maximum penalty. Did you read that, the maximum penalty that could be imposed upon you?
THE DEFENDANTS:
(Defendants answer affirmatively.)
THE COURT:
All right. Let's look below your signature. There's a spot where it says Plea Agreement. I need you to take a little time and read through that now.
I have two questions on the plea agreement. The first question is is there anything on the document that you did not think would be there?
Some of you all are still reading, so I'll wait.
Okay. Is there anything on the document that you thought would not be there?
THE DEFENDANTS:
(Defendants answer negatively.)
THE COURT:
Is there anything that you thought would be there that is not there?
THE DEFENDANTS:
(Defendants answer negatively.)
THE COURT:
So there's nothing added on, nothing left out?
THE DEFENDANTS:
(Defendants answer negatively.)
THE COURT:

*880 Very well. Did anybody promise you anything in order to get you to change your plea?
THE DEFENDANTS:
(Defendants answer negatively.)
THE COURT:
Now, let's go back. A plea agreement is a recommendation from the lawyers to me as to what would be the most appropriate sentence in your particular case. The prosecutor is telling me, has looked at how the crime occurred. The defense attorney has looked at that in addition to providing some information about your particular background. And based on all of that, the lawyers have come up with a recommendation as to what would be the most appropriate sentence in your particular case. That is what is in the plea agreement.
Do you understand that?
THE DEFENDANTS:
(Defendants answer affirmatively.)
THE COURT:
Did anybody threaten you or coerce you or say that you would be harmed in any way if you did not change your plea?
THE DEFENDANTS:
(Defendants answers negatively.)
THE COURT:
Several of you, where it says Plea Agreement, it says "PSI" or "pre-sentence investigation requested." What that is is a requestwe're not going to impose sentence on you today. We're going to request that the Department ofDivision of Probation and Parole perform an investigation as to how the crime occurred, some information about the victim, some information about yourself, your background, and provide that to me in a report 60 to 90 days from now, and make a recommendation as to what would be the most appropriate sentence in your case.
Do you understand that?
THE DEFENDANTS:
(Defendants answer affirmatively.)
Following these questions to the entire group, the trial court addressed each of the defendants individually as to the factual basis for their charges. Following this particularized questioning, the trial court accepted the guilty pleas and alerted the defendant that his sentencing would await a Pre-Sentence Investigation. The record contains the following:
THE COURT:
Okay. You've talked with your lawyer about these offenses and your plea of guilty and the plea of no contest and the rights that you are waiving when you change your plea. You and I have had a discussion about the same things.
Do you have any questions of me about your plea that you've changed or the plea agreement or anything else we've been talking about?
THE DEFENDANTS:
(Defendants answer negatively.)
THE COURT:
Afteras a result of us having this discussion, considering those things we've been talking about, is it still your desire to change your plea to either guilty or no contest?
THE DEFENDANTS:
(Defendants answer affirmatively.)
THE COURT:
Okay. I find that these defendants have knowingly, willingly, consciously and intelligently waived their rights, and I accept their tendered pleas and find them guilty. I'm going to make the guilty plea form a part of the record.
Mr. Stanley Jones, Mr. Charles Bernard, Mr. Frankie Richard, I'm not going to sentence you today. I'm going to order a pre-sentence investigation in your particular cases. I'm going to request that the report be provided to me within 90 days. And we will serve you with another court date so that you may be sentenced. And you will have a sentencing hearing on that date.
If you desire to present me with any evidence that would indicate that you should not be sentenced harshly, that's the time to do it; okay?

*881 ....
(Emphasis added.)
The defendant appeared for sentencing on July 5, 1995. However, defense counsel was not present at that time. At this hearing, the defendant alerted the trial court to his belief that his guilty plea was entered pursuant to a plea agreement. The trial judge indicated that there was no such agreement. The following exchange is contained in the record:
THE COURT: We have sentencing on Charles Bernard. Mr. Bernard, when is the last time you spoke to Mr. Reggie?
THE DEFENDANT:
A week ago he called me.
THE COURT: Have you paid him to represent you?
THE DEFENDANT:
About $30,000.00
. . . . .
THE DEFENDANT:
... When I pleaded guilty that day, a plea bargain was supposed to be upholded. That's what they had told me, you know, that.
THE COURT: What plea bargain?
THE DEFENDANT:
You know, allsomething that we had agreed on that was going to take place on this date.
THE COURT: Okay. Well, what we talked about was your lawyer being able to present on this day some information that would indicate that you should not be punished very severely, and
THE DEFENDANT:
And seem
THE COURT: and we're here today to hear that.
THE DEFENDANT:
And it seem like that he didn't even subpoena the witness that's supposed to talk on my behalf.
As the defendant was unrepresented at the July 5th hearing, the trial court granted a continuance and ordered the defendant to retain counsel.
The sentencing hearing was held on August 22, 1996 at which time the defendant once again appeared without counsel. As the trial court had previously warned the defendant, any further continuance was denied. At the hearing, the defendant represented himself and advised the trial court of the circumstances surrounding the alleged plea agreement. The following exchange took place:
THE DEFENDANT:
... I would like to ask you that when you do decide to sentence me, that I hope the sentence would be exactly what the lawyer had promised me, you know, before [sic] I'm standing up here today without a lawyer.
. . . . .
THE DEFENDANT:
... I have paid one attorney $7,500.00 just to come and look at me through a window, and it's not right.
THE COURT: So why did you do it?
THE DEFENDANT:
Well, he lied to me.
THE COURT: Let me understand this. You figured that if you paid a lawyer a lot of money, that that would prevent you from goingfrom being punished?
THE DEFENDANT:
No, sir. I paid the lawyer the money because of the plea agreement that he said he could have got. That's the reason.
THE COURT: Since we've talking about it, at the time you made this plea agreement, what's your understanding as to what the plea agreement was?
THE DEFENDANT:
When I came in front of you the first time, I had no idea you were going to do a pre-finish [sic] report. When I first came in front of you, the plea agreement they say I was going to receive was a $5,000.00 fine and three years or five years of probation. That was the agreement that I went with. That was the agreement that I believed he could have got. That was my knowledge.

*882 THE COURT: You don't remember a conversation with me during this process of taking your guilty plea?
THE DEFENDANT:
INo, sir. All I thought that was was just regular procedures. All I was doing is listening to my attorney.
THE COURT: So then when I asked you questions about the rights that you were waiving
THE DEFENDANT:
He told me that was just normal procedures, that that was just questions you was going to ask.
THE COURT: And so when I asked you the questionsBefore we started the questions, I asked you to honestly answer my questions.
THE DEFENDANT:
Uh-huh (affirmative response).
THE COURT: And now you're telling me you were lying then?
THE DEFENDANT:
No, sir. I was only saying what they told me to say. They told me the Judge was going to ask me these questions, you just say yes or whatever.
THE COURT: All right. Let's assume that that is correct.
THE DEFENDANT:
Uh-huh (affirmative response).
THE COURT: Let's assume that your lawyer says: Whatever the Judge says, you say yes.
THE DEFENDANT:
Yes, sir.
THE COURT: All right. Now, if I ask you to answer my questions honestly and you say yes, you're lying to me. You never intended to say yes?
THE DEFENDANT:
Yes, sir.
THE COURT: So you lied to me?
THE DEFENDANT:
If some of the questions I answered and it wasn't correct, I did follow the orders of my attorney.
THE COURT: So you lied to me?
THE DEFENDANT:
I don't know the questions you asked.
THE COURT: I asked you ifwhat was your understanding of the nature of the charges.
THE DEFENDANT:
Uh-huh (affirmative response).
THE COURT: You agreed with this District Attorney's description that you sold the drugs.
THE DEFENDANT:
Yes, sir.
THE COURT: At the time of taking your plea, I told you that we were going to order a pre-sentence investigation. You don't remember that?
THE DEFENDANT:
No, sir.
THE COURT: All right. This circle is going on and on.
MR. EVERETT: Yes.
THE COURT: Mr. Bernard, I'm having the impression you have a very selective memory, and I am confident that the record reflects that I informed you that we were ordering a pre-sentence investigation. I did have a discussion with your former attorney about what the potential range of the sentence would be if your criminal history was as your attorney described it to be. That was the nature of the discussion. There was never a firm agreement about what your sentence would be.
THE DEFENDANT:
Uh-huh (affirmative response).
THE COURT: I gave your lawyer some information about what the possible sentence would be if the pre-sentence investigation confirmed your criminal history was minimal and not severe. I don't understand why you are believing that you had a firm commitment of "X" amount of years. That never happened.
THE DEFENDANT:
That's what I was made to believe, Judge.
THE COURT: Well, if you believed that, that's because you didn't listen to *883 me; that's because you lied to me when I told you that I was ordering a pre-sentence investigation.
THE DEFENDANT:
Uh-huh (affirmative response).
THE COURT: I don't know why you would not listen to me. I'm the one who has to make the decision about what your sentence would be.
THE DEFENDANT:
Yes, sir.
Thereafter, the trial court sentenced the defendant to serve 210 months at hard labor, to run consecutively to a federal sentence the defendant was serving at the time of sentencing.
Given the record now before us, we find no abuse of discretion in either the trial court's denial of the Motion to Reconsider Sentence or in not allowing the defendant to withdraw the plea before sentencing. As previously stated, a guilty plea may, in fact, be invalid or constitutionally infirm if a defendant is induced to enter a guilty plea pursuant to what he believes was a plea agreement and the terms of that agreement are not fulfilled. Readoux, 614 So.2d 175. However, if that misunderstanding as to the alleged agreement occurs between the defendant and his counsel, the consequences are not as severe as if the misunderstanding occurs between the defendant and either the district attorney or the trial court. Id.
In the present case, the misunderstanding, if one occurred, appears to be wholly between the defendant and his attorney, whether the attorney involved was either Edmund Reggie, who represented the defendant up until his guilty plea, or Greg Reggie, who represented the defendant at the guilty plea hearing. The defendant maintains that he believed that he was pleading guilty and would receive a specific suspended sentence and be ordered to pay a specific fine. However, the transcript of the guilty plea hearing clearly indicates that the trial court was ordering a Pre-Sentence Investigation and that sentencing would be based on that report. There is no indication that either the trial court or district attorney was involved in the misunderstanding/misrepresentation. In the face of this portion of the record, we do not conclude that the defendant's plea was made any less freely or voluntarily.
With regard to the plea agreement form, the defendant argues that the form has been altered and that such alteration indicates that a plea agreement existed, but that the form was later changed without his knowledge. Our review of the form indicates that the form, indeed, has several blacked out portions on the plea agreement section. However, we are unable to determine whether this was done before or after the defendant signed the form. In any event, the form reflects what the defendant eventually pled to in open court. This form reflects, as did the trial judge's statement, that sentencing would await the outcome of a Pre-Sentence Investigation.
For the foregoing reasons, these assignments are without merit.

Excessiveness of the Sentence
In his final assignment of error, the defendant contends that his sentence is constitutionally excessive. Primarily, the defendant attributes the excessiveness to the trial judge's order that it run consecutively to a federal sentence he was serving at the time of sentencing. The two sentences together resulted in over thirty-three years of incarceration. The defendant argues in brief that this term "is clearly excessive and unconscionable considering the fact that the distribution in question consisted of a Fifty and no/100 ($50.00) Dollar rock of crack cocaine, and the defendant's bail was set in the total sum of One Thousand and no/100 ($1,000) Dollars.[1]"
Article 1, § 20 of the Louisiana Constitution prohibits "cruel, excessive, or unusual punishment." A sentence that falls within the statutory limits, may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La. 1979); State v. Naquin, 527 So.2d 601 (La. *884 App. 3 Cir.1988). To constitute an excessive sentence, this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
State v. King, 96-1303, pp. 6-7 (La.App. 3 Cir. 4/2/97), 692 So.2d 1296, 1300.
With regard to whether a concurrent or a consecutive sentence should be imposed in a particular case, La.Code Crim.P. art. 883 provides, in part, the following:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
Furthermore, a trial court has the discretion to order a sentence to run either consecutively or concurrently with a sentence imposed by a federal court. See La.Code Crim.P. art. 883.1.
In the present case, the defendant pled guilty to distribution of crack cocaine. The penalty for that crime, a violation of La.R.S. 40:967(A), is provided for at La.R.S. 40:967(B). That statute provides that a person convicted of that crime "shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars."
In articulating reasons for the defendant's sentence, the trial judge stated that the defendant had eight felony convictions and several misdemeanor convictions on his record, and in the past had been placed on probation or parole four or five times, only one of which was successfully completed. The trial court also noted the existence of federal cocaine charges which arose after the defendant's guilty plea was entered for the instant offense; the trial court asserted, "your decision to sell crack cocaine was a bad decision ... your decision to sell crack cocaine while you were waiting on me to develop what was the most appropriate sentence for you was an even worse decision." The trial court rejected the defendant's claim that he was not heavily involved in the distribution of drugs.
Following the sentencing colloquy, the defendant specifically asked the trial judge for a concurrent sentence rather than the consecutive term imposed. The judge explained he was imposing a consecutive sentence because the federal charges arose after the defendant pled guilty to the instant offense. The judge addressed the defendant as follows:
You committed a crime in Louisiana. You were waiting for me to determine what the sentence was. You sold crack cocaine here while you were waiting for me to determine what the most appropriate punishment was. You again attempted to sell crack cocaine. That tells me that you thought you could get away with it, that you were unremorseful, and you would do whatever you wanted to do.
We conclude that the trial court did not abuse its discretion in imposing the sentence now at issue. The pre-sentence investigation indicates that the defendant had, in the past, been convicted of various crimes and, as stated by the trial court, the defendant was arrested on federal drug charges only days after entering his guilty plea in the instant matter. As such, we do not conclude that a sentence of 210 months at hard labor is excessive.
We further find no merit in the defendant's contention that the sentence should have been ordered to run concurrently with the defendant's federal sentence. While true *885 that the federal and state charges against the defendant involved cocaine, the charges stem from completely separate and unrelated incidents. La.Code Crim.P. art. 883 provides that concurrent terms are appropriate where the offenses are based on the same act or transaction. Accordingly, this assignment lacks merit.

Errors Patent
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we conclude that there are two possible errors patent, both of which involve sentencing issues.
We first observe that the defendant was not represented by counsel at his sentencing hearing. While self-representation is not an error, we review the record to ensure that the defendant's right to counsel was properly waived.
In State v. Dupas, 94-1264 (La. App. 3 Cir. 3/6/96), 670 So.2d 667, this court held that a defendant has a right to counsel at his sentencing and resentencing. "Unless a defendant has made a knowing and intelligent waiver of his right to counsel, any sentence imposed in the absence of counsel is invalid and must be set aside." Id. at p. 4, at 669, quoting State v. Flowers, 598 So.2d 1144 (La.App. 1 Cir.1992). However, "[a] defendant's failure to secure his own counsel and refusal to accept court appointed counsel may result in an implied waiver of his right to counsel." State v. Mitchell, 580 So.2d 1006, 1009 (La.App. 3 Cir.1991), writ denied, 613 So.2d 969 (La.1993).
In Mitchell, 580 So.2d 1006, this court found that a defendant had impliedly waived his right to counsel by his dilatory tactics. The defendant in that case initially asked for representation by the Indigent Defender Board, but later informed the trial court that he was able to hire an attorney. The trial court later granted a continuance but informed the defendant that he must either hire an attorney, accept an attorney from the Indigent Defender Board, or represent himself. After this instruction, the defendant initially accepted an appointed attorney and the case was continued for the third time. However, when the defendant next appeared in court, he informed the trial judge that he had a conflict with the court-appointed attorney and, once again, wanted to hire his own attorney. After being so advised, the trial court granted a fourth continuance and advised him of the following:
BY THE COURT: "... I want to caution you very strongly that if this is your request then the next time this matter is set for trial you're going to go to trial, either with your attorney that you hire or represent yourself. You can't just keep coming back and saying that you don't want an attorney or you can't afford and [sic] attorney or you couldn't find an attorney or whatever...."
Id. at 1008-09. On the defendant's trial date he appeared before the court without an attorney and informed the court that he could not represent himself because he was undergoing "treatment" and that he had not made an attempt to obtain counsel. The trial court instructed him to represent himself and appointed an attorney to assist should he need assistance. Upon review, this court concluded that the defendant was repeatedly given the opportunity to obtain counsel and that his failure to do so "can only be interpreted as an attempt to avoid trial." Id. at 1009.
In State v. Batiste, 96-0526 (La.App. 3 Cir. 12/11/96), 687 So.2d 499, writ denied, 97-0174 (La.6/30/97), 696 So.2d 1003, this court once again concluded that a defendant's multiple appearance before the trial court without representation constituted an implied waiver of the right to counsel. The defendant was originally before the trial court on various criminal charges. His initial appearances were for arraignment on two separate charges. Each time he was accompanied by counsel from the Indigent Defender Board. On his second appearance, however, he told the trial court that he would retain his own counsel. Despite this claim, the defendant next appeared before the trial court without an attorney. Further, he continued to appear before the court without counsel and told that trial court that he had either retained counsel or would do so during eight of these appearances. By doing so, the defendant *886 obtained three continuances in order to retain counsel and caused the trial court to hear three Motions to Determine Counsel. Ultimately, since the defendant neither retained counsel nor accepted representation from the Indigent Defender Board he was instructed by the judge that the trial would proceed with or without the assistance of counsel. In review, this court found that: "Clearly, defendant's conduct in failing to secure his own counsel or to accept court appointed counsel in this matter constitutes an implied waiver of his right to counsel." Id. at p. 10, at 505. Finding substantial evidence was introduced to support the defendant's conviction, the court found the defendant was not unduly prejudiced by his own representation.
In the present case, the defendant initially hired Edmund Reggie as his attorney. The record indicates that Mr. Reggie represented the defendant in the early stages of this case, however, the minutes indicate that as early as December 12, 1994, the court advised the defendant of Mr. Reggie's inability to practice law. The minutes from that day indicate, in part, the following:
MOTION TO DETERMINE COUNSEL having been set for this date finds the accused present in open Court in proper person. These matters are set for trial on January 9, 1995 and the defendant states it is his understanding that Mr. Edmund Reggie will represent him in these matters. The Court now takes a recess at which time the District Attorney's Office contacted Mr. Reggie to confirm that his [sic] representing Mr. Bernard on January 9, 1995. Mr. Reggie has told Mr. Everett that he is not able to practice law at this time but anticipates being reinstated but is not able to say when. Mr. Bernard states he wishes for Mr. Reggie to remain as his counsel.
The Court ORDERS Mr. Bernard to retain another counsel now so as to be prepared for trial on January 9, 1995.
As previously stated, the record indicates that when the defendant appeared before the court on January 9, 1995, he was represented by Greg Reggie. At that time, he withdrew his initial not guilty plea and entered a guilty plea. Also at that time he was advised that sentencing would await a Pre-Sentence Investigation.
The next minute entry includes the defendant's appearance before the trial court on July 5, 1995. That entry reflects the following:
SENTENCING of this matter having been set for this date finds the accused present in open Court with John Craton who stood in on behalf of retained counsel, Mr. Edmund Reggie, is now continued by the Court until September 11th, 1995 @ 9:30 a.m., so that the defendant may retain new counsel.
While the minutes indicate that John Craton, stood in on behalf of Edmund Reggie, the transcript shows that the defendant appeared in proper person, and Mr. Craton, although presumably present, did not speak during the July 5, 1995 hearing. Sentencing was continued in order for the defendant to retain new counsel. The transcript of that hearing indicates the defendant had paid Mr. Reggie $30,000.00 to represent him. When asked if Mr. Reggie told him why he would not be present for sentencing, the defendant responded:
No, he never asked me for more money. He told me Mr. John Craton was going to stand in his place, and I told him the only thing I knew about Mr. Craton is when he done some paperwork when I purchased some land. Mr. Craton don't know anything about this case.
The transcript indicates some confusion as to whether the Defendant was represented by Edmund Reggie or Greg Reggie. The following colloquy then took place:
THE COURT: Okay. Well, when we were last in court in January, Greg Reggie was your lawyer. Do you remember that?
THE DEFENDANT:
Greg Reggie was standing in with his father, Judge Reggie.
THE COURT: Well, are you expecting Greg Reggie to be here today?
THE DEFENDANT:
No, sir. I called Greg Reggie home last night.

*887 THE COURT: Uh-huh (affirmative response).
THE DEFENDANT:
They told me he would be out of town.
THE COURT: You do realize that Mr. Reggie is not currently licensed to practice law?
THE DEFENDANT:
I didn't know that when I hired him as a lawyer.
THE COURT: Oh, no, I understand. That was in September of '93, when you hired him. But in January of '95, when you pled guilty, you knew that Edmund Reggie was not licensed and you knew that Greg Reggie was licensed, and Greg Reggie was representing you on that day. Is that right?
THE DEFENDANT:
When IYes, sir. When I pleaded guilty that day, a plea bargain was supposed to be upholded. That's what they had told me, you know, that.
THE COURT: What plea bargain?
THE DEFENDANT:
You know, allsomething that we had agreed on that was going to take place on this date.
THE COURT: Okay. Well, what we talked about was your lawyer being able to present on this day some information that would indicate that you should not be punished very severely, and
THE DEFENDANT:
And seem
THE COURT: and we're here today to hear that.
THE DEFENDANT:
And it seems like that he didn't even subpoena the witness that's supposed to talk on my behalf.
THE COURT: Well, again, Greg Reggie would be the person who would be able to do this. Edmund Reggie is not licensed to practice law.
THE DEFENDANT:
I didn't know none of that, Judge.
THE COURT: Well, you knew this, because I told you this.
THE DEFENDANT:
I knew that he couldn't
THE COURT: I gave you a continuance
THE DEFENDANT:
practice law, right.
THE COURT: because I told you he couldn't practice law.
THE DEFENDANT:
He kept telling me yes.
THE COURT: He may have told you he could practice law, but I told you he couldn't.
THE DEFENDANT:
He did.
THE COURT: Okay. Well, I understand that Judge Reggie, Edmund Reggie, is attempting to get his license back. He has not gotten it back. He has been attempting to get it back for a number of years. You need to stop waiting for him. You need to get yourself another lawyer. I have continued this case a couple of times in order to help you in this, but it's time to pay the piper.
Judge Reggie cannot be your lawyer. You need to stop dreaming about him being your lawyer. It will not happen. If you believe that you have paid Judge Reggie and he has not done what you paid him for, then that's a matter you need to take up with him. If you think he's gotten too much money from you, you need to get that money back from him. That's between you and him. I can't help you with that.
But I realize that there are no witnesses here prepared to present evidence that would tend to show that you should not be punished very severely, and I told you I would give you an opportunity. I will grant you a continuance. I'm notThis is it. Last time. This is the secondat least the second time I've given you a continuance after telling you that Judge Reggie is not a lawyer, is not a lawyer licensed to practice law. Do not wait for him to become a lawyer licensed to practice law.
The next time we come to court, you will have another lawyer, you will have *888 no lawyer, but that's your choice. But the next time we will be prepared to hear whatever evidence the State has that would tend to prove that you should be punished very severely, and we will listen to whatever evidence you have that would tend to show that you should not be punished severely at all. But we will have this hearing. We will give you the appropriate sentence. We will be finished with this.
Do you understand?
THE DEFENDANT:
Yes, sir.
THE COURT: Do not wait for Judge Reggie.
THE DEFENDANT:
Uh-uh (negative response).
THE COURT: He will not come to court with you. If you have a problem with whatever money you paid him, deal with that problem, but he is not going to be in court with you. Do you understand me?
THE DEFENDANT:
Yes, sir.
As previously indicated, the sentencing was continued. The minutes from the court's next meeting, September 11, 1995, indicate the following: "SENTENCING of this case having been set for this day finds the defendant is incarcerated in Texas. This matter is continued."
Also contained in the record are the minutes from May 16, 1996 which indicate that: "SENTENCING having been set for this day is continued by the State until May 30, 1996 at 9:00 am." No further explanation for the continuance, however, is given. Neither is there an entry informing this court as to what occurred on May 30th.
Following these continuances and the trial court's clear instructions in July 1995, the defendant appeared at his August 22, 1996 sentencing hearing without counsel. The following colloquy took place at the beginning of the sentencing hearing:
THE DEFENDANT:
Judge Rubin[sic][2], my understanding last time we met, that I was supposed to get another attorney to represent me. And I had a little bad luck. I got caught with Federal time, so I'm doing Federal time now. I had no idea that I was coming back to court yesterday. I have been in touch with Mr. Gravel, Camille. He's an attorney out of Alexandria. Then I have spoke with Mr. Nichols and all that, but I'm more in shock right now because I didn't know I was coming to court. I wasn't prepared.
THE COURT: Do you recall me telling you that you and I needed to meet again for a sentencing?
THE DEFENDANT:
Yes, sir.
THE COURT: Do you recall me telling you that you needed to hire a lawyer?
THE DEFENDANT:
Yes, sir.
THE COURT: Okay. So now you're telling me you haven't actually hired a lawyer?
THE DEFENDANT:
Yes, sir.
THE COURT: And yet you're standing here for court without a lawyer?
THE DEFENDANT:
Yes, sir. I
THE COURT: Well, this suggests to me that you've chosen not to hire a lawyer.
THE DEFENDANT:
No, sir, that's not true.
THE COURT: Well, when was the last time you were in court?
THE DEFENDANT:
July of '95.
THE COURT: And what's the date today.
THE DEFENDANT:
August of '96.

*889 THE COURT: That seems like enough time to hire a lawyer to me.
THE DEFENDANT:
I had no idea that I was coming back to court today. I haven't been contacted or anything. I haven't been
THE COURT: In July of '95 you knew you were coming back to court.
THE DEFENDANT:
Yes, sir.
THE COURT: It's now August of '96.
THE DEFENDANT:
Well, I had a lawyer then. In other words, Mr. Camille Gravel was going to come in on this.
THE COURT: You hired him?
THE DEFENDANT:
Yes, sir, Mr. Camille Gravel was representing me and all.
THE COURT: You paid him?
THE DEFENDANT:
I did pay him something for Beaumont.
THE COURT: And he has not filed in this record as your attorney?
THE DEFENDANT:
No, sir.
THE COURT: So then he's not your lawyer.
THE DEFENDANT:
(No response.)
THE COURT: We are here today and you are without a lawyer, and I think it's as a result of your not taking the steps to hire a lawyer.
THE DEFENDANT:
I would have got a lawyer if I would have knew I was coming today. They picked me up yesterday. The Federal system, you know they was in a shock. They didn't know that I was coming to court. That's what they told me.
THE COURT: Let's assume that you didn't have this in court today,
THE DEFENDANT:
Uh-huh (affirmative response).
THE COURT: you knew that you needed to come back to court?
THE DEFENDANT:
Yes, sir.
THE COURT: You knew that you needed to hire a lawyer?
THE DEFENDANT:
Yes, sir.
THE COURT: You haven't hired a lawyer.
THE DEFENDANT:
I haven't hired one, but I did speak with several lawyers about this case and I did have several lawyers respond to me, writing me letters.
THE COURT: Yes, but I've continued this case several times. Each time you were saying you were going to hire a lawyer,
THE DEFENDANT:
Uh-huh (affirmative response).
THE COURT: you were going to hire a lawyer, just give you more time, you were going to hire a lawyer, just give me more time. I give you time, I give you time, I give you time. The last time we were in court, I told you there is no more time.
THE DEFENDANT:
Yes, sir.
THE COURT: I guess I'm lying or you're lying.
THE DEFENDANT:
I'm lying.
THE COURT: Okay. Then I'm taking it that we're going to proceed today and we've determined that it's not important enough for you to hire a lawyer ever.
The district attorney then explained to the court that he had received a letter on June 20, 1996 from Mr. Gravel, indicating that Mr. Gravel had previously represented the defendant but had not heard from him during the last couple of months. According to the letter, which is contained in the record, Mr. Gravel assumed that the defendant had hired other counsel. While the State rested on the Pre-Sentence Investigation Report, the defendant introduced his own testimony and that of his two brothers at the sentencing hearing.
*890 Although the court in the present case did not obtain an express waiver of counsel from the defendant, we conclude that the defendant's failure to obtain counsel constituted an implied waiver of counsel. As previously noted, the defendant was advised early in the proceeding that his choice of counsel, Edmund Reggie, would not be available to represent him. Despite this early warning and a clear instruction from the trial judge on July 5, 1995 that the defendant would be sentenced at the upcoming hearing with or without counsel, the defendant did not pursue representation. We conclude that this repeated failure by the defendant coupled with the clear, unequivocal instruction of the trial judge constitutes an implied waiver of counsel.
Although this case is distinguishable from Mitchell and Batiste since no court-appointed attorney was present during the defendant's sentencing nor was one offered to the defendant at sentencing, there is no evidence that the defendant in the present case qualified for court-appointed counsel. Further, the minutes for March 26, 1993 show the Defendant was advised of his right to the appointment of counsel if found to be indigent. Neither can we find that the defendant was prejudiced by the waiver of counsel as he presented credibility witnesses and was able to explain to the sentencing judge why he should be given a light sentence. Finally, we note that the defendant has not complained of his self-representation at sentencing.
We also note that the record does not indicate that the defendant was given credit toward service of his sentence for time he spent in actual custody prior to the imposition of the sentence. Article 880 of the Louisiana Code of Criminal Procedure provides the following: "The court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence."
In view of this clear statutory language, we remand this case to the district court with orders to amend the commitment and minute entry of the sentence to reflect credit for time served in conformity with La.Code Crim.P. art. 880. See La.Code Crim.P. art. 882(A). See also State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La.3/30/95), 651 So.2d 858.

DECREE
For the foregoing reasons, the conviction and sentence of the defendant, Charles B. Bernard, are affirmed. This case is remanded and the district court is instructed to amend the minute entry to reflect that credit has been given for time served.
CONVICTION AFFIRMED; SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] We note that the one thousand dollar bail referenced by the defendant stemmed not from the instant matter, but from a January 1993 arrest. The bail for the matter now at issue was set at fifty thousand dollars.
[2] Despite this reference from the defendant, the record indicates that Judge Jules Edwards, III presided at this hearing.