684 So.2d 26 (1996)
STATE of Louisiana
v.
Terrence L. HIDALGO.
No. CR96-403.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
*27 Bernard E. Boudreaux Jr., District Attorney, for State of Louisiana.
*28 Thomas E. Guilbeau, Lafayette, for Terrence L. Hidalgo.
Before WOODARD, DECUIR, and PETERS, JJ.
PETERS, Judge.
The defendant, Terrence Hidalgo, was charged with possession with intent to distribute marijuana, a Schedule I drug as defined by La.R.S. 40:964(C)(22), in violation of La.R.S. 40:966(A). He originally pled not guilty to the charge but later withdrew his not guilty plea and entered a plea of guilty. The defendant was subsequently sentenced to serve ten years at hard labor with all but thirty months of such sentence suspended. In addition to the thirty-month incarceration period, the defendant was placed on supervised probation for five years, which was subject to both general and special conditions. The defendant then moved to set aside his guilty plea and have his sentence reconsidered. The motion to set aside the guilty plea was denied, and the trial court amended the defendant's sentence to increase the incarceration period to thirty-six months. The defendant has appealed.

DISCUSSION OF THE RECORD
The defendant was charged by bill of information with a violation of La.R.S. 40:966(A) on April 20, 1994. On June 2, 1994, he appeared in court with his attorney, Warren Ashy of Lafayette, Louisiana, and entered a plea of not guilty. The defendant next appeared in court on April 28, 1995, at which time he withdrew his plea of not guilty and entered a plea of guilty to the charge. His attorney at that time was Frank G. DeSalvo of New Orleans, Louisiana.
Before the defendant entered his plea, the state explained to the trial court that the defendant's plea was conditioned only on the trial court ordering a presentence investigation and a Sentencing Guidelines report and upon both the defendant and the state being allowed to present additional information relative to aggravating or mitigating circumstances. Initially, the state informed the trial court that, as a part of the plea arrangement, the defendant would forfeit all evidence seized in the case, including a 1988 Chevrolet van. After a short recess, the plea arrangement was modified to provide that the defendant would either pay a fine of $5,000.00 within sixty days or forfeit the van. The trial court then placed the defendant under oath and explained his rights to him pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). As a part of that process, the court asked the defendant if any promises had been made to him other than the ones discussed in the plea arrangement. The defendant stated that no additional promises had been made to him. After completion of the Boykinization process, the trial court accepted the defendant's plea and ordered a presentence investigation and a Sentencing Guidelines report.
The defendant was sentenced on December 19, 1995. By this time, he was represented by a third attorney, George McHugh, of St. Martinville, Louisiana. Mr. DeSalvo was also present although no longer an attorney of record. The defendant was sentenced to serve ten years at hard labor with all but thirty months of such sentence suspended. As a condition of the suspended sentence, he was placed on supervised probation for a period of five years. In addition to the general conditions of probation required by law, the defendant was ordered to submit to random drug screening and pay all the costs associated with such screening; reimburse the St. Martin Parish Sheriff's Office $1,500.00, the estimated cost of the investigation associated with the criminal charge; and pay a fine of $5,000.00 over the period of probation. He was given credit for the $5,000.00 previously paid in conjunction with the Chevrolet van seizure.
On January 2, 1996, the defendant filed a motion to withdraw or set aside his guilty plea and a motion to reconsider his sentence. At the trial of these motions held on January 24, 1996, the defendant was represented by yet another attorney, Thomas E. Guilbeau of Lafayette, Louisiana. The motion to withdraw the guilty plea was denied by the trial court. As to the motion to reconsider the sentence, the trial court amended the sentence to increase the actual incarceration time to thirty-six months. The defendant *29 has appealed, asserting three assignments of error.

OPINION
In his first assignment of error, the defendant contends that the trial court erred in not permitting him to withdraw his guilty plea. He contends that the plea agreement was breached because he was promised: (1) that he would receive no jail time; (2) that other charges pending in Lafayette Parish against both he and his wife would be dropped; and (3) that the Chevrolet van seized in this offense would be returned to his father-in-law. However, at the trial of the motion, the defendant acknowledged that these assurances were never made to him by the state or the court but rather only his former attorney, Frank G. DeSalvo, had made such promises to him.
In reviewing whether a trial court has erred in not allowing the withdrawal of a guilty plea, an appellate court must recognize that the trial court has wide discretion in such a decision and that discretion should not be disturbed unless it was exercised arbitrarily. State v. Jones, 546 So.2d 1343 (La. App. 3 Cir.1989). Once sentence has been imposed, a defendant may only withdraw his guilty plea if he is able to show that it is constitutionally infirm. Id. Since the defendant filed his motion to withdraw his guilty plea after his sentence was imposed, he must show that such plea was constitutionally infirm in order to be allowed to withdraw it. This court in State v. Readoux, 614 So.2d 175, 176 (La.App. 3 Cir.1993), explained what constitutes a constitutionally infirm guilty plea:
A guilty plea is invalid, or constitutionally infirm, when a defendant is induced to enter a plea of guilty by a plea bargain agreement, or what he reasonably or justifiably believes was a plea bargain agreement, and the terms of the bargain are not satisfied. It is well settled that if a defendant's misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there is no ground for invalidating the guilty plea.
(Emphasis added) (citations omitted).
The record is clear that any misunderstanding on the part of the defendant was not induced by or attributed to anything stated to him by the state or the trial court. The trial court stated in its reasons for ruling on the motion that it had made no promises to the district attorney, the defense attorney, the defendant, or anyone else as to what the defendant's sentence would be. A misunderstanding between a defendant and his counsel does not have the same implications as a breached plea bargain, and therefore, such a misunderstanding will not render the guilty plea invalid. Id.
The defendant argues that he was induced to enter the guilty plea, not because of a misunderstanding between himself and Mr. DeSalvo, but because of fraud. In other words, he contends that Mr. DeSalvo misrepresented the terms of the plea bargain to him and continued to misrepresent those terms during the Boykinization process. He contends that but for this fraudulent misrepresentation, he would not have entered a guilty plea. We note that it is well-settled in the jurisprudence of this state that "when a guilty plea is induced ... by what a defendant justifiably believes is a plea bargain, and that bargain is not kept, defendant is denied due process of law because the guilty plea was not freely and knowingly given." State v. Hayes, 423 So.2d 1111, 1114 (La. 1982). We must determine in this case whether the trial court erred in concluding that the defendant did not justifiably believe his plea bargain contained the specific promises that he allegedly was led to believe it contained.
At the hearing on the motion to withdraw his plea, the defendant testified that he called Mr. DeSalvo on April 26, 1995, concerning his hearing scheduled for April 28, and was informed that there was an agreement whereby, if he changed his plea to guilty, he would receive no jail time, his father-in-law's van would be returned, and charges pending in Lafayette Parish would be dropped. On the next day, the defendant went to Mr. Ashy's office in Lafayette and requested that *30 Mr. Ashy telephone Mr. DeSalvo to confirm what he had been told the day before concerning his sentence. Mr. Ashy testified that he telephoned Mr. DeSalvo at the defendant's request. Based on his understanding of this telephone conversation, he told the defendant that the defendant's understanding of the plea bargain sentence was correct. According to the defendant, before he changed his plea on April 28, he was again assured by Mr. DeSalvo that the three promises were the basis of the sentence he would receive.
The defendant contends that he thought the very thorough Boykinization process conducted by the trial judge was merely a "formality." In that process, the defendant testified under oath that no one had made him any promises concerning sentencing and the trial judge made it clear that he was making no promises concerning the sentence that might be imposed.[1] At the Boykinization hearing, the $5,000.00 fine was imposed in lieu of the van forfeiture. Although this fine was obviously not consistent with what the defendant contends he was promised, he made no objection.
By the time he was sentenced on December 19, 1995, the defendant had already dismissed Mr. DeSalvo and hired Mr. McHugh. Even before sentencing, he claims to have discussed withdrawing his plea with Mr. McHugh. According to the defendant, Mr. McHugh advised him "not to make the judge mad" by attempting to do so. He contends that even Mr. McHugh advised him that he would "probably get probation."
The defendant presents no explanation for his continued concern over the sentencing process if he genuinely believed that specific promises had been made to him concerning his sentence. He acknowledged on cross-examination that an additional condition of the plea bargain was his cooperation in providing information to law enforcement agencies but admitted that he had not lived up to his end of the bargain.[2] It is not clear that Mr. Ashy was aware of this condition when he discussed the matter with Mr. DeSalvo, and he could not have known that the defendant would not comply with the condition prior to sentencing. The defendant had from April 28, 1995 to December 19, 1995, in which to provide assistance and information, and the record was left open for the trial court to be made aware of his cooperation. The defendant testified that he thought he would receive a suspended sentence regardless of the level of his cooperation.
It is obvious that the trial court did not believe the defendant's contention that he was led to enter a guilty plea through fraud. It is the trial court's role to weigh the credibility of a witness against the remaining evidence, and this court should not second-guess these credibility determinations beyond the sufficiency evaluations under the Jackson[3] standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). We do not find that the trial court erred in concluding that the defendant's guilty plea was not induced by any action of the state or the trial court. Nor do we find that the trial court erred in concluding that the guilty plea was not induced by the fraudulent conduct of Mr. DeSalvo. Thus, we find no merit in this assignment of error.
The defendant's next assignment of error addresses the trial court's increase of his term of imprisonment from thirty months to thirty-six months. He contends the trial court abused its discretion in doing so without articulating a valid reason for the increase and without discovering any new information to justify such an increase. Although the court's action was taken pursuant to a motion to reconsider sentence, the language used by the trial court constituted an amendment to the sentence rather than a reconsideration. La.Code Crim.P. art. 881(A) provides:

*31 Although the sentence imposed is legal in every respect, the court may amend or change the sentence, within the legal limits of its discretion, prior to the beginning of execution of the sentence.
As a general rule, a hard-labor sentence commences on the day after its imposition. La. R.S. 15:566.2. However, in the present case, the trial court, in imposing the original sentence, agreed that it would allow the sentence to be made executory after the first of the year since it was so close to Christmas and the defendant did not appear to present a flight risk. The defendant was ordered to report to the St. Martin Parish jail at 9:00 A.M. on January 4, 1996. The defendant filed his motion to withdraw his plea of guilty and his motion to reconsider sentence on January 2, 1996, effectively postponing the execution of his sentence. Thus, the trial court had the authority to amend the defendant's sentence at the hearing on January 24, 1996.
The United States Supreme Court has held that there is no absolute constitutional bar to the imposition of a more severe sentence on retrial. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's "life, health, habits, conduct, and mental and moral propensities." Williams v. New York, 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 [(1949)].
Id. at 723, 89 S.Ct. at 2079.
Despite concluding that there was no absolute constitutional bar to the imposition of a harsher sentence, the court recognized that due process dictates that a defendant should not be punished for having been successful in getting his conviction set aside. Id. In order to prevent such retaliation by the trial court, the Court held that the reason for a more severe sentence must affirmatively appear in the record. Id. Thus, a trial judge is well within his authority to alter a sentence as long as he provides justification in the record for such an upward deviation.
Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.
Id. at 726, 89 S.Ct. at 2081.
In Wasman v. United States, 468 U.S. 559, 568, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984), the Supreme Court further explained Pearce by stating:
If it was not clear from the Court's holding in Pearce, it is clear from our subsequent cases applying Pearce that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights.
In the present case, after denying the defendant's motion to withdraw or set aside his guilty plea, the trial court considered the motion to reconsider sentence and ruled as follows:
Well, I am going to reconsider his sentence. I've thought about his case. Instead of taking his medicine, admitting his guilt, and accepting his sentence, he chose instead to attack his plea when he knew it was free and voluntary. And in thinking about it, I think I was too easy on him the first time around. So I am going to reconsider his sentence, and I am going to amend it by increasing his hard labor time to 36 months rather than 30 months, which is in accordance with the pre-sentence investigation. And, except as so amended, the sentence will be reaffirmed.
In so ruling, the court not only failed to provide adequate justification on the record for its decision to increase the defendant's sentence but also apparently increased his sentence because he chose to exercise his right to attack his guilty plea. Since the increased sentence failed to satisfy the dictates of due process as set forth in Pearce, *32 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, such sentence must be vacated. We remand this matter to the trial court for resentencing consistent with the guidelines laid down by the Supreme Court in Pearce.
In his last assignment of error, the defendant claims that the sentence imposed on resentencing is excessive and otherwise constitutes cruel and unusual punishment. Our decision to vacate that sentence and remand this matter to the trial court pretermits a discussion of this assignment. However, our decision to vacate the sentence is not to be construed as a comment on the merit or lack of merit of this assignment.

DISPOSITION
The defendant's conviction is affirmed in all respects. However, his sentence is vacated, and the matter is remanded for resentencing consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] The trial judge did agree to keep the record open in order to give the state and the defendant the opportunity to provide the court with additional information regarding aggravating or mitigating circumstances.
[2] Although not specifically mentioned, it is obvious that the defendant was to supply law enforcement personnel with information concerning criminal activity.
[3] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).