| iPICKETT, Judge.
This is a writ application that has been remanded to this court by the Louisiana Supreme Court for fifing of briefs, oral argument and issuance of an opinion. The *157 Relator, Corinne Moree, pled guilty to possession of marijuana with intent to distribute and the trial court sentenced her to five years hard labor, suspended two years and placed the Relator on five years supervised probation subject to general and special conditions.
The Relator filed an application for post conviction relief claiming that her attorney assured her that if she pled guilty, she would be placed on five years probation and not have to serve any time in jail. The trial court rejected the Relator’s claim at the conclusion of an evidentiary hearing, but this court granted the Relator’s writ application and found merit to her claim. State v. Moree, an unpublished writ bearing docket number 99-402 (La.App. 3 Cir. 8/11/99). As noted, the Louisiana Supreme Court granted the State’s writ application and remanded this matter to this court for reconsideration. State v. Moree, 99-2670 (La.3/24/00); 757 So.2d 648.

ISSUE

The issue is whether the evidence presented at the evidentiary hearing on the petition for post-conviction relief sufficiently established that Corinne Moree justifiably believed that she had entered into a plea bargain, which would have granted her a five-year suspended sentence and a $10,000.00 fine, without imprisonment, in exchange for her guilty plea.

FACTS

The Louisiana State Police arrested the Relator on February 24, 1996, after she consented to a search and approximately fifty-three (53) pounds of marijuana were | j>found in the trunk of the rental car the Relator was driving. The Relator was charged with possession of marijuana with the intent to distribute, a violation of Louisiana Revised Statutes 40:966(A)(1). It appears from the transcripts of the hearings that a public defender initially represented the Relator but she later retained Mr. Lomax Jordan in January of 1997 to represent her. On September 23, 1997, the Relator pled guilty before Judge Paul deMahy to the charged offense. In the colloquy between the trial judge and the Relator, there appeared to have been no plea bargain and no sentence recommendation.
During the plea colloquy, a dispute arose whether the Relator refused to testify against a co-defendant, or if the prosecutor was simply not satisfied with the information the Relator could provide about the co-defendant. It appears that the State had previously offered a plea bargain to the Relator if she agreed to testify against Cynthia West, a co-defendant who hired the Relator to drive the rental car. The Relator told the police she had been paid by Cynthia West to drive the rental car from Lafayette, Louisiana, to another location. However, the Relator changed her story about whether Ms. West was driving in another car that had been in front of the Relator, or if Ms. West had given the Relator a pager number to call when the Relator reached the drop-off location. Ms. West was considered the mastermind of the criminal transaction, and she was charged and convicted for her participation in the crime. The State mentioned at Relator’s sentencing that because the Relator refused to cooperate, Ms. West received a light sentence that did not reflect her degree of culpability. There is nothing in the record to show precisely what sentence the co-defendant received.
Immediately after the Relator pled guilty, the State and Mr. Jordan presented witnesses for the sentencing hearing. Ms. Moree testified that at the time of her | ¡¡arrest, she had fallen on hard times financially. She acknowledged she made a bad judgment call by agreeing to drive a car for a person whom she had heard trafficked drugs, but she insisted that she would not have agreed to drive the car in return for $1,000.00 if she knew it contained over fifty pounds of marijuana. On cross-examination, the prosecutor brought out that Ms. Moree had told the arresting *158 officer and the investigating officers one thing about Ms. West’s involvement, but when the Relator later met with the prosecutor to attempt to work out a plea agreement in return for her testimony against Ms. West, the Relator changed her story. Since the initial police reports were inconsistent with what the Relator later said about the crime, the State could not use her testimony against Ms. West, and Ms. West apparently benefitted from it.
Both the prosecutor and Mr. Jordan argued to the trial judge about what they felt the Relator’s sentence should be, and in the end, the trial judge noted that the Relator received money for her participation in the crime, she had lived a law-abiding life, and that she was in a difficult financial situation. However, the trial judge noted that the Relator knew she was transporting something illegal in the car and that there was no justification for her conduct. The trial judge sentenced the Relator to five years at hard labor, and he suspended two of these years and placed the Relator on five years supervised probation. As conditions of probation, Relator was ordered to pay a $20.00 monthly supervision fee, serve twenty eight-hour days of community service, submit to random drug tests, pay the Louisiana State Police $1,000.00 for the cost of the investigation, pay $50.00 to the Louisiana Commission on Law Enforcement fund, and finally, pay a fine of $1,000.00.
Seven months later, another attorney retained by the Relator’s family filed an application for post conviction relief. In this application, the Relator claimed she had Lbeen led to believe by Mr. Jordan that the trial judge had agreed to sentence her to five years probation and she would not have to serve any time in jail, and further that the hearing on September 23, 1997, was a formality that she had to go through. An evidentiary hearing began on October 2, 1998, before Judge Paul de-Mahy, but when it became apparent that he would be called as a witness, he recused himself. Judge Wattigny presided over the next evidentiary hearing on December 2, 1998. At the conclusion of the hearing, the judge rejected Ms. Moree’s claims.
The testimony at the evidentiary hearing revealed that after Mr. Jordan had been retained to represent Ms. Moree, he approached the prosecutor about the possibility of a plea bargain. According to Mr. Jordan, Mr. Haney said “he had no problem with Mr. Jordan ‘cutting a deal with whatever judge I chose, and that I was welcome to go and do that’ and he was fine with that.” However, Mr. Haney refused to make any recommendation for a sentence. As a result, Mr. Jordan approached Judge deMahy about his client’s case. “I went to the judge and I told him that I had permission from Mr. Haney to speak with him directly concerning a potential plea of Ms. Moree and what sentence she would be looking at in the event that she entered a plea, and then he told me, and then Mr. Haney came in later at the second conversation and, that was repeated, and — .” According to Mr. Jordan, Judge deMahy said Ms. Moree would be looking at a sentence of five years hard labor, suspended and a $10,000.00 fine.
Later that same day, Mr. Jordan met with Judge deMahy and Mr. Haney about the case. Mr. Haney informed Mr. Jordan and Judge deMahy that “he would have to oppose that deal by way of having a sentencing hearing.” Mr. Jordan then said he was concerned about problems arising from a sentencing hearing, and when he related his concerns to Judge deMahy, the judge “told me not to worry about that, that Phil |Boften went through sentencing hearings and it was just his way.” Mr. Jordan testified that he thought it was firm that Ms. Moree would receive a suspended five-year sentence, no time in jail, and a $10,000.00 fine, and he relayed this information to her. The key piece of evidence in this ease is a letter written by Mr. Jordan on August 29, 1997. This letter was addressed to Judge deMahy and a copy was sent to Mr. Phil Haney, the prosecutor, and the letter stated:
*159 Dear Judge deMahy:
As you will recall, we attempted to set the plea and sentencing of Corinne Mor-ee for July 28, 1997. She had ear trouble in Beaumont and was unable to attend.
Shortly thereafter I was engaged in the legislative session and we were unable to accommodate a plea as intended.
It is my recollection that you had agreed to sentence Ms. Moree to five (5) years hard labor suspended, five (5) years active supervised probation, and a $10,000 fine. Half of the fine, namely $5,000 would be paid on the date of sentencing and the remaining balance would be paid over a period of time. It is our desire that we coordinate an acceptable plea date in this matter with Phil Haney’s office.
Thanking you for your kind professional courtesies and extending my own, I remain
Sincerely,
s/J. Lomax Jordan, Jr.
At the December 2, 1998 evidentiary hearing, Judge deMahy testified he could not recall receiving the letter from Mr. Jordan. The letter was not in any of his files. The judge recalled speaking with Mr. Jordan about Ms. Moree’s case, and Mr. Jordan had asked the judge to give him an idea of what the Relator would be facing and if it was possible for her to receive a suspended sentence. Judge de-Mahy did not recall giving Mr. Jordan a firm commitment on the sentence he was going to impose upon Ms. Moree. The judge said it was not his intention to convey to Mr. Jordan that regardless of the information produced at the sentencing hearing that Ms. Moree | ¿would receive a suspended sentence. However, Judge de-Mahy could not recall the specifics of the conversation. The judge admitted that in the past he had promised defense attorneys what the sentence would be prior to the sentencing of their clients.
Later, Judge deMahy testified:
Q Did you make any promises to Mr. Jordan?
A The only thing that may be considered a promise is that, if the evidence at the sentencing hearing presented — the evidence proved only the facts that he revealed to me in our discussion, then there’d be — that Miss Moree probably would receive a completely suspended sentence. But the evidence at the sentencing hearing — the information he provided me in that conversation was presented at the sentencing hearing, but that was not all that was presented. None of the information provided through the state’s witnesses was I aware of at the time Mr. Jordan and I spoke.
The information provided by the State’s witnesses was that Ms. Moree told the police she was to drive the car to Jackson, Mississippi, (she later said Meridian, Mississippi), and once there she was to page Cynthia West to make the transfer. However, the Relator changed her story and said she was following Cynthia West who was driving another car ahead of her on the interstate.
Ms. Moree testified that Mr. Jordan led her to believe that the Boykinization and sentencing hearing was a formality or “dog and pony show” and that he had the assurances from the judge who was his friend that she would receive a suspended sentence with no time in jail. Ms. Moree claimed that as a result of Mr. Jordan’s assurances to her and her parents, she answered all of the questions in the Boyk-inization in such a manner as to establish that no plea bargain or agreement had been reached as inducement for her to plead guilty. After Ms. Moree was sentenced, she was ordered to begin serving her sentence immediately. She testified that her parents paid Mr. Jordan a retainer of $10,000.00, but he never filed any further |7motions nor an appeal on her behalf, despite constant calls from the Relator and her parents.

*160
LAW AND DISCUSSION

The Relator claims she had a justifiable belief that in return for her guilty plea, she would receive a suspended sentence and a fine of $10,000.00. The Relator’s “justifiable belief” was based upon assurances of her attorney, Lomax Jordan.
There must be an affirmative showing in the record that a defendant, at the time he enters his guilty plea, knowingly and voluntarily waives his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The knowing and voluntary nature of the waiver can be affected by misunderstandings about the inducements or promises made to the defendant. This court ruled in State v. Readoux, 614 So.2d 175, 176-177 (La.App. 3 Cir.1993), that not all misunderstandings will invalidate a guilty plea:
A guilty plea is invalid, or constitutionally infirm, when a defendant is induced to enter a plea of guilty by a plea bargain agreement, or what he reasonably or justifiably believes was a plea bargain agreement, and the terms of the bargain are not satisfied. State v. Jones, 546 So.2d 1343, 1346 (La.App. 3d Cir.1989); State v. Taylor, 535 So.2d 1229, 1230 (La.App. 3d Cir.1988), quoting State v. Dixon, 449 So.2d 463, 464 (La.1984). It is well settled that if a defendant’s misunderstanding is not induced by or attributed to representations made by the district attorney or the trial court, there is no ground for invalidating the guilty plea. State v. Malmay, 548 So.2d 71, 73 (La.App. 3d Cir.1989); State v. Jones, supra.
It is also well settled that a misunderstanding between a defendant and counsel for defendant does not have the same implication as a breached plea bargain agreement, and this misunderstanding does not render the guilty plea invalid. State v. Lockwood, 399 So.2d 190 (La.1981); State v. Johnson, 533 So.2d 1288, 1292 (La.App. 3d Cir.1988), unit denied, 563 So.2d 873 (La.1990). In the absence of fraud, intimidation, or incompetence of counsel, a guilty plea is not |Rmade less voluntary or less informed by the considered advice of counsel. See, State v. Johnson, 461 So.2d 1259, 1261 (La.App. 1st Cir.1984).

Id.

In the present case, there were no promises or assurances given to the Relator by the trial judge. Furthermore, the only time the prosecutor spoke with the Relator was during the unsuccessful attempt to bargain for Ms. Moree’s testimony against her co-defendant in return for a beneficial plea agreement. That leaves the defense attorney, Mr. Jordan, as the only person who made assurances or promises to the Relator that led her to plead guilty.
In State v. Readoux, we noted that absent fraud, intimidation or incompetence of defense counsel, a guilty plea will not be invalidated based simply upon a misunderstanding between the defense counsel and his client. In State v. McBroom, 25,781 (La.App. 2 Cir. 2/23/94); 632 So.2d 916, on appeal after new trial, State v. McBroom, 27,027 (La.App. 2 Cir. 5/10/95); 655 So.2d 705, the incompetency of defense counsel in advising a defendant to accept a plea bargain without having the trial judge also join in the sentence recommendation resulted in the reversal of the convictions and sentences. In McBroom, the defendant faced three counts of aggravated rape of his young stepdaughter and he agreed to plead guilty to two counts of simple rape, but the defense attorneys did not obtain an agreement from the trial judge that the two twenty-five-year sentences would be served concurrently rather than consecutively. When the trial judge imposed consecutive sentences, the defendant in McBroom successfully argued that counsel’s incompetence in advising the defendant invalidated the guilty plea; however, the result of the successful appeal was reinstatement of the original charges.
*161 |aIn State v. Hidalgo, 96-403 (La.App. 3 Cir. 11/6/96); 684 So.2d 26, the defendant claimed his defense counsel fraudulently assured him and another attorney that he was going to receive a suspended sentence. At his Boykinization, the defendant in Hi-dalgo was asked by the trial judge if any promises had been made, other than an agreement to pay a fine rather than have a vehicle forfeited, to induce the defendant to plead guilty and the defendant stated that no additional promises had been made to him. The trial judge ordered a presen-tence investigation report and allowed the defendant to present any additional information relative to mitigating circumstances.
Approximately eight months after pleading guilty, Hidalgo was sentenced to ten years hard labor, with all but two and one-half years suspended, and he was placed on probation subject to conditions. Within a few weeks, the defendant filed a motion to withdraw his guilty plea and he argued that he was induced to plead guilty not by a simple misunderstanding with his defense attorney, but by fraudulent misrepresentation by defense counsel throughout the Boykinization that led the defendant to believe the colloquy was a mere formality. Id. We found that the trial judge did not err in rejecting the claims of the defendant. The determination whether the conduct of defense counsel constitutes fraudulent misrepresentation sufficient to invalidate a guilty plea is based upon a weighing of the credibility of the witnesses against the remaining evidence, and the fact-finder’s determinations will not be second-guessed. Id.
In State v. Bernard, 97-362 (La.App. 3 Cir. 10/8/97); 702 So.2d 876, the defendant argued that his defense attorneys had assured him he would receive a suspended sentence in return for his guilty plea. At his Boykinization, which was an en masse Boykinization of several defendants, some of the defendants pled guilty 11flpursuant to plea agreements, but there was no such indication that Bernard did so, and the trial judge informed defendant-Bernard that his sentencing would await the outcome of a presentence investigation report. The court advised Bernard that if he desired to present any evidence in mitigation, “that’s the time to do it ... ” Id. at 880.
Bernard later objected at the sentencing hearing, stating that he was told by his defense attorneys there was a plea agreement, but the trial judge rejected the defendant’s attempts to withdraw his guilty plea or reconsider the seventeen and one-half year sentence. In affirming the rulings of the trial court, we stated:
In the present case, the misunderstanding, if one occurred, appears to be wholly between the defendant and his attorney, whether the attorney involved was either Edmund Reggie, who represented the defendant up until his guilty plea, or Greg Reggie, who represented the defendant at the guilty plea hearing. The defendant maintains that he believed that he was pleading guilty and would receive a specific suspended sentence and be ordered to pay a specific fine. However, the transcript of the guilty plea hearing clearly indicates that the trial court was ordering a Pre-Sen-tence Investigation and that sentencing would be based on that report. There is no indication that either the trial court or district attorney was involved in the misunderstanding/misrepresentation.
In the face of this portion of the record, we do not conclude that the defendant’s plea was made any less freely or voluntarily.
Id. at 883.
More recently, in State v. Walton, 98-1433 (La.App. 3 Cir. 3/24/99); 738 So.2d 36, writ denied, 99-1195 (La.10/1/99); 748 So.2d 434, we rejected a defendant’s claim that defense counsel’s misrepresentations led him to plead guilty. In Walton, 738 So.2d at 46, we stated:
In its reasons denying the Defendant’s Motion to Withdraw the Guilty Plea, the trial court stated that no credi *162 ble evidence existed indicating that promises had been made to him regarding the terms and the conditions of incarceration in the Jefferson Davis facility. The trial court chose to believe the testimony of Defense counsel and the sheriff over the Defendant and his family members. The trial court was not manifestly erroneous in determining that no credible evidence existed establishing that his guilty plea was the result of illicit promises concerning the terms and the conditions of incarceration.
| Id. at 46.
These three third circuit cases show that a defendant has a heavy burden of proving that defense counsel’s actions or inactions induced the client to give a constitutionally defective guilty plea. The McBroom case appears to be an exceptional ease; the second circuit emphasized that before the State offered to reduce the three aggravated rape charges to two simple rape charges, the defendant had rejected the initial offer to reduce the charges to one forcible rape charge with a forty-year sentence. We are to decide, in essence, if Mr. Jordan’s actions and his inaction rise to a level of “fraud, intimidation or incompetence” sufficient to invalidate the Relator’s guilty plea.
In State v. Hall, 26,006, 26,007 (La.App. 2 Cir. 5/4/94); 637 So.2d 645, writ denied, (La.9/30/94); 642 So.2d 868, a defendant introduced a letter written by his attorney that said the defendant would be sentenced to probation pursuant to a plea bargain agreement. Pursuant to a plea bargain, the defendant pled guilty to reduced charges, subject to a sentence cap of ten years. The trial court went through an extensive colloquy with defendant and discussed the rights he was waiving by pleading guilty, the minimum and maximum sentences and the terms of the plea bargain. The trial court found that there was a factual basis for defendant’s pleas, that the pleas were freely and voluntarily made and that defendant understood the nature of the charges against him. While out on bond awaiting completion of a pre-sentence investigation report, the defendant was arrested in Texas on drug charges. Later, the trial court sentenced the defendant to ten years at hard labor, but the defendant claimed he thought he was to receive a suspended sentence and probation:
In support of his motion to set aside his guilty pleas, defendant introduced into evidence a letter typed on Gregory Caver’s, his former attorney’s, letterhead, addressed “To Whom It May Concern” and dated December 1,1992. The letter stated that Mr. Caver represented Mr. Hall | ^(defendant) on all criminal charges and that “after reviewing the matters with all District Attorneys involved, and upon agreement with the Judge presiding over his cases, Mr. Hall is to be placed on supervised probation.”
During questioning, defendant admitted that he got his former attorney to write this letter to the finance company who had repossessed his car. According to defendant, in order to get his car back, he needed verification that he would not be going to jail, but would be placed on probation. This letter was written prior to the guilty pleas and while Hall was- on bond. The state objected to this letter on the basis of hearsay and lack of authentication. The trial court allowed the letter into evidence, but stated that “Mr. Caver was not called, and I have the unsubstantiated allegation that that was the purpose of this letter. It does not take the place of the court’s discussion with the defendant on the record under oath.”
Id. at 647.
The trial court rejected the defendant-Hall’s claim, and the second circuit found no error in this conclusion.
In the present case, the presiding judge made a credibility determination that Judge deMahy did not give defense counsel, Mr. Lomax Jordan, a firm commitment to suspend Ms. Moree’s sentence. The *163 problem with Mr. Jordan’s claim that he received a firm commitment is that other than his testimony, all that Mr. Jordan has to prove his claim is the confirmation letter. It may be argued that either Judge deMahy or the prosecutor, if they received copies of this letter, should have said something to refute its contents. However, the Relator may not have relied upon the letter because she testified that she never saw the letter until after her sentencing, and she only heard Mr. Jordan talk about a “confirmation” letter prior to it. Mr. Jordan acknowledged that Ms. Moree’s case was not set for the plea docket of the court, but rather the trial docket and he received a letter from the prosecutor informing him that the Moree case was a top priority case.
Thus, we find that while Ms. Moree was induced to plead guilty to the original charge as a result of a misunderstanding ■with her defense counsel, such a guilty plea launder the circumstances was not sufficient to invalidate the plea. This conclusion is supported by her failure to speak up during the Boykinization and sentencing colloquy. Further, there does not appear to have been an agreement between the defense and the State or the trial judge to impose a particular sentence. Therefore, Ms. Moree’s guilty plea was not constitutionally infirm.

CONCLUSION

Based on the foregoing discussion, Cór-teme Moree’s conviction and sentence are affirmed.
AFFIRMED.
THIBODEAUX, J., dissents and assigns written reasons.